FRANCIS BURNS *vs.* THE MAYOR AND CITY COUNCIL
OF BALTIMORE.

*Construction of the Act of 1874, ch. 218, relating to Streets,*
*&c., in the City of Baltimore—Principle upon which the*
*Owners of adjacent property are taxed for the Improvement*
*of Streets—An Ordinance passed for the purpose of carry-*
*ing into effect the Act of 1874, ch. 218, must conform to its*
*provisions — Construction of Ordinance No. 79, of 1874,*
*providing for regrading, &c., Light Street between Pratt*
*and Lee Streets in the City of Baltimore.*

The Act of 1874, ch. 218, has made important changes in the laws relating to
streets in the City of Baltimore, and in the powers conferred upon the City
authorities respecting them, but it does not grant to such authorities power
to grade, pave and curb, or regrade, repave and recurb any street or part
thereof for the public *convenience generally*, or for the benefit of the *whole
city*, without any motive or purpose of special benefit to property in the
immediate locality, and to assess the cost of the work upon the owners of
such property.

Whether the conferring of such power is within the scope of legislative
authority, *Quære?*

The theory and foundation of all previous legislation in passing these special
assessments for improvements of this character upon the owners of adjacent
property, is that the improvement is for their benefit, and that they derive
such advantage from it, in the enhanced value of their property, over and
above what is conferred upon the public at large, that it is just they should
be specially assessed therefor, and on this ground the validity of such laws
has been sustained by the Courts.

Any ordinance providing in pursuance of the Act of 1874, ch. 218, for a
special case of paving or repaving a street or any part of a street, without
the application of the property owners, and assessing the cost in whole or
in part on the adjacent property, must be passed with the motive and for
the purpose of conferring a special benefit upon such property, or else it is
nugatory and void.

Ordinance No. 79, of 1874, entitled "An Ordinance to provide for regrading, repaving and recurbing Light street between Pratt and Lee streets," being intended not for the benefit of the property owners who are specially taxed under it, but for the benefit and convenience of the *public at large*—the whole city—is consequently unauthorized and void, so far as it attempts to enforce such special assessments.

APPEAL from the Superior Court of Baltimore City.

This suit was instituted by the appellee against the appellant. Errors in pleading were mutually waived and the case was submitted on the following agreement:

"It is agreed that the sum of $707.55 is sought to be recovered in this action, and is claimed by the plaintiff to be due to it by defendant, as and for taxes assessed against him on account of the regrading, repaving and recurbing, of Light street, between Pratt and Lee streets, under the Ordinance of July 16th, being City Ordinance, No. 79, of that year. It is agreed that the defendant is the owner of property fronting 113 feet, 6 inches on said part of Light street, and that he is liable as such for the amount claimed, if the owners of property fronting on said part of Light street can be constitutionally and lawfully taxed (as and by reason only of their being such owners,) for the regrading, repaving and recurbing aforesaid, under the said Ordinance, the General Ordinance, No. 44, of 1874, the Act of 1874, ch. 218, the Constitutions of Maryland and the United States, and statements and admissions of this agreement.

"It is further agreed, that no application was made to the plaintiff by the owners of a majority or of any number of the front feet of property binding on Light street, between Pratt and Lee streets, or on any other part of Light street, for the regrading, repaving and recurbing aforesaid, or for the passage of the Ordinance aforesaid of 1874, No. 79, but that the said work was done and the cost thereof assessed, one-third on the city and two-thirds, *pro rata,*

·(exclusively of other citizens,) on the owners of property binding and fronting on Light street, between Pratt and Lee streets, (including the defendant,) altogether, under the assumed authority of the Ordinances and Acts of Assembly hereinbefore referred to; the assessment so made on the defendant being that which is sought to be recovered in this action.

"The plaintiff affirms the legality and constitutionality of such assessment, and its right to recover in this action, upon the case herein stated and the defendant denies the same. It is agreed that the Court shall have the power to make all inferences of fact which it shall deem proper to make from the facts herein stated, and shall render judgment for plaintiff or defendant, according as it may see fit to adjudge in the premises."

A judgment, *pro forma*, was rendered in favor of the plaintiff for the sum of $707.55, with interest from the 20th of March, 1877, and costs of suit. From this judgment the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER, ALVEY and ROBINSON, J.

*S. Teackle Wallis*, for the appellant.

*James A. Buchanan*, for the appellee.

MILLER, J., delivered the opinion of the Court.

The Act of 1874, ch. 218, has made important changes in the laws relating to streets in the City of Baltimore, and in the powers conferred upon the city authorities respecting them. Without citing the language of the Act in full, we shall state briefly what these changes are, so far as they apply to the present case, reversing the order in which they appear in the statute.

1st. The Mayor and City Council are vested with power to provide by "*general ordinance*," for the grading, pav-

ing, curbing, or for the regrading, repaving and recurbing of any street or part of a street in that city, "without the passage of a *special ordinance* in the particular case," whenever the owners of a majority of front feet of property binding on such street, or part of a street shall apply for the same, upon terms and conditions to be prescribed in such general ordinance, and for the assessment of the cost of the work, in whole or in part, *pro rata,* upon all the property binding upon such street or part thereof. There is no difficulty in understanding this provision. It retains that feature of antecedent laws which required *applications* of adjacent property owners, but dispenses with the necessity of a special ordinance on each application. To put in motion the power thus delegated there must still be an application by the owners who think their property will be benefited by the improvement, but the mode of making the application and all the proceedings thereon by the city officials, including the assessment of the cost of the work in whole or in part, *pro rata,* upon the adjacent property, may be prescribed by one general ordinance applicable to all such cases. That is the effect of this part of the statute, and Ordinance No. 44, of 1874, containing general provisions on this subject was passed in pursuance thereof.

2nd. The Mayor and City Council are also vested with full power and authority to provide "*by ordinance*" for the grading, paving and curbing, or for the regrading, repaving and recurbing of any street or part of a street in the city, and also for assessing the cost of "*any such work,*" in *whole* or in part, *pro rata,* upon the property binding on such street or part thereof. It is important to the case before us to ascertain and determine the construction and effect of this clause of the statute, and that is the question we shall now consider.

Read in connection with the other provision, it is clear the intent of this was to give to the Mayor and City

Council power to pass ordinances in *special cases* for the purposes indicated, *without any application* by property owners. In thus dispensing with such applications in particular cases, it differs from antecedent legislation on this subject, (which the Act repeals,) but it is· too plain for argument that this was the purpose of the law-makers. But the more important question then arises, does this law grant to the City authorities power to make improvements of this character for the public *convenience generally*, or for the *benefit of the whole City* without any motive or purpose of special benefit to property in the immediate locality, and to assess the cost of the work upon the owners of such property? If it does, then the grave question is presented, whether such an enactment would be within the scope of legislative power. No decision of any Court has yet gone to the extent of sustaining such a law, and there are many strong ones to the contrary. But in this case, we are not confronted with that question. For assuming the power to exist, it would be so oppressive and unjust to exert it, that we cannot impute to the Legislature the intent to do so, unless that intent has been manifested by clear and unambiguous language. In the first case in which that clause of the City's Charter, (Act of 1797, ch. 54, sec. 2,) which gave the power "to tax any particular district for paving the streets, lanes, or alleys therein, or for sinking wells or erecting pumps, *which* may appear for the benefit of such particular part or district," came before this Court for construction, it was contended that the word "which" related to wells and pumps only, but the Court refused so to restrict the application of this term, and said: "It is difficult to suppose that the Legislature meant to authorize the imposition of a special tax on any particular part of the City, for any paving which should not appear to be for the benefit of such part. Such a power might be attended with evil consequences, and in many cases work very great

injustice. Where a street is directed to be paved for the
benefit of a particular part or district of the city, it is
perhaps proper that such part or district should be taxed
for the purpose ; but where the paving is for the general
benefit, and not of the immediate district in which the
street lies, it ought to be paid for out of the general fund ;
and there would be much injustice in imposing a special
tax on the particular district for that object, which could
not have been the intention of the Legislature. And
where a law is of doubtful construction, that interpreta-
tion should be given it which is pregnant with the least
mischief." *Moore & Johnson's Case*, 6 *H. & J.*, 375. And
this construction was re-affirmed in *Hughes' Case*, 1 *G. &
J.*, 492, where the Court said " a different construction
would be at war with the intention of the Legislature, as
it never could have been contemplated to give to the cor-
poration the power to tax any *particular* part or district
of the city for any paving which was for the *general* bene-
fit, and not for the benefit of the *immediate* part or district
taxed." The theory and foundation of all previous legis-
lation imposing these special assessments, for improve-
ments of this character upon the owners of adjacent prop-
erty, is that the improvement is for their benefit, and that
they derive such advantage from it, in the enhanced value
of their property, over and above what is conferred upon
the public at large, that it is just they should be specially
assessed therefor, and on *this ground* the validity of such
laws has been sustained by the Courts. We find nothing
in the terms of the statute now under consideration, indi-
cating a purpose to abandon this just and reasonable basis
of such legislation. It differs from former laws, in dis-
pensing with the application of the property owners, and
leaves it to the Mayor and City Council to decide in spe-
cial cases, whether the proposed paving or repaving will be
for the benefit of such owners. It allows the whole or a
part of the costs, as the city authorities may determine,

to be assessed upon the property owners, but the fact that a part may be assessed on the owners, and the rest upon the public, cannot alter the rule of construction to be applied to the law. An adjacent owner who is assessed for any part of such cost, over and above what he would have to pay as one of the public, is *specially* assessed, and is so assessed upon the assumption, that his property has been benefited to the extent of such special assessment. This, in our opinion, is the true construction of this legislative grant of power, and it follows that any ordinance passed for the purpose of carrying it into effect must conform to its provisions. In other words, an ordinance providing for a special case of paving or repaving a street or any part of a street, without the application of the property owners, and assessing the cost, in whole or in part, on the adjacent property, must be passed with the motive and for the purpose of conferring a special benefit upon such property, or else it is nugatory and void. But how is the Court to determine whether a particular ordinance on this subject is thus within the granted power or not? The authorities already cited furnish a complete answer to this question. In an ordinance providing for such paving and the imposition of such special tax, it is not necessary that it should be expressly stated to be for the benefit of the particular district, for if nothing appears to the contrary, such an exercise of the special taxing power will be taken to have been in pursuance of the authority given by the charter; it will be presumed that the corporation did not exceed its powers, but imposed the tax for the purpose only for which the charter authorizes it to be imposed, and that the paving appeared to the City Council to be for the benefit of the particular district; but where an ordinance provides for the paving of a street in a particular district, and the imposition of a special tax for that purpose on such district, which paving *appears by the ordinance* to be for the *general benefit of the City*, and not for the benefit

of the particular district, such an ordinance is not in pursuance of the authority conferred by the charter, and is void. 1 *G. & J.*, 492, 493; 6 *H. & J.*, 381, 382.

Aided and guided by these principles and rules of construction, we have no difficulty in determining the question as to the validity of Ordinance No. 79, of 1874, the assessment under which on his property the appellant resists. It is very brief, and is entitled "An Ordinance to provide for regrading, repaving and recurbing Light street, between Pratt and Lee streets." Its preamble recites "Whereas the *public convenience* requires, that Light street between Pratt and Lee streets, should be graded, paved and curbed, therefore" it is enacted "That the City Commissioner is hereby authorized and directed to have all that part of Light street aforesaid regraded, repaved and recurbed with Belgian pavement, in pursuance of the Act of Assembly, ch. 218, of 2nd of April, 1874, and according to the provisions of Ordinance No. 44, approved June 4th, 1874, providing for the grading, gravelling, shelling, curbing and paving of streets, lanes or alleys of the City of Baltimore, so far as the same may be applicable." To this ordinance the reasoning of the Court in *Moore and Johnson's Case* (6 *H. & J.*, 382,) is directly applicable. In the enacting clause alone not a word is to be found expressive of the opinion of the makers that the repaving directed to be done, would be, or appeared to them to be, for the benefit of the owners of the adjacant property. It simply directs a certain part of a particular street to be repaved, and refers for the mode of procedure and the doing of the work, to an antecedent general ordinance, under which, among other provisions relating to such cases, it is provided that one-third of the whole cost shall be paid by the City, and two-thirds by the owners of the property binding on the street or part of it so directed to be repaved. Looking to the enacting part of the ordinance alone, it is matter of *conjecture* that the work appeared to the corporation to be for the benefit of such

owners, and in the absence of anything else on the subject, the *presumption* would be that it did so appear, and that the corporate authorities so adjudged and therefore did not exceed their powers. But in determining this question every part of the ordinance must be taken into consideration, and when we look to the preamble, the intention of the makers is clearly disclosed, and conjecture and presumption are at once out of the way. We there find it plainly and explicitly declared that in the judgment of the Mayor and City Council the improvement was *required* for "*the public convenience*," and that their motive in paving it was to promote that object. The repaving with more durable material of a part of a particular street, leading from one business centre of a large city to another, over which travel with heavily loaded vehicles is constant, may well be a matter of general concern, but where the proper authorities have expressly declared they so consider it, there is nothing left to construction. Hence it clearly appears to us, that this is an ordinance intended not for the benefit of the property owners, who are *specially taxed* under it, but for the benefit and convenience of the *public at large*, the whole city, and it is therefore unauthorized and void so far as it attempts to enforce such special assessments. Placing the invalidity of the ordinance in this respect, upon this plain ground, it becomes unnecessary to decide whether its validity is open to question for any of the other reasons relied on in argument by the appellant's counsel, and we rest the reversal of the *pro forma* judgment appealed from upon this ground alone.

*Judgment reversed.*

(Decided 8th March, 1878.)